Richard Michael ROSS, Plaintiff and Appellant,

v.

Carol Dee ROSS, Defendant and Respondent,

and

Utah State Department of Social Services, Intervenor.

Nos. 15800, 15830.

Supreme Court of Utah.

March 9, 1979.

R. Scott Williams, Stephen G. Schwendiman, Asst. Atty. Gen., Salt Lake City, for defendant and respondent.

WILKINS, Justice:

Plaintiff brought this action to modify a California divorce decree, which we recognize he could properly do,[1] and defendant counterclaimed for accrued but unpaid alimony and child support. The Utah State Department of Social Services, through the Bureau of Recovery Services (herein "Recovery Services") intervened seeking reimbursement from plaintiff for assistance payments made to defendant from October, 1972 to August, 1973.

Plaintiff appeals from that part of the District Court's judgment awarding $24,457 to defendant, and $1,544 to the State of Utah. On cross-appeal, defendant seeks a reversal of that part of the Court's judgment granting plaintiff credit of $5,000 against accrued and unpaid alimony. No appeal is taken from the District Court's modification of the California divorce decree in favor of plaintiff.[2]

Plaintiff and defendant were divorced in California in 1971. At a divorce hearing held February 19, 1971, plaintiff was ordered to pay to defendant alimony in the amount of $150 per month and child support in the amount of $100 per month for each of the three minor children who were issue of the marriage.

The day following the divorce hearing, plaintiff left the State of California and went to Dallas, Texas, where he lived under an assumed name. Plaintiff admitted that his purpose in doing so was to avoid his child support and alimony obligations. Defendant contacted the district attorney in San Mateo, California, for help in locating plaintiff, but the district attorney was unsuccessful. Defendant resided in California until August, 1972, at which time she moved to Utah. Here she applied for and

Robert B. Sykes, Salt Lake City, for plaintiff and appellant.

1. See *Ciraulo v. Ciraulo*, Utah, 576 P.2d 884 (1978); *Scott v. Scott*, 19 Utah 2d 267, 430 P.2d 580 (1967).

2. The District Court terminated alimony and reduced child support from $100 per month per child to $75 per month per child.

received state assistance, and assigned her right of child support and alimony to the State of Utah to the extent of the assistance received by her.

Plaintiff contacted defendant by telephone in October, 1972, but told defendant he was in Colorado, rather than Texas. At this time, Recovery Services began to search for plaintiff but did not locate him until September, 1973.

In February, 1973, plaintiff came to Salt Lake City, and spent a week in a motel while he visited his children. He contacted defendant by telephone from time to time after this, and began sending her occasional checks of $20 or $25, until Recovery Services located him in September, 1973. He then began to send $225 each month, which Recovery Services turned over to defendant. Defendant received no further state assistance after that time.

The parties attempted a reconciliation in 1976. In February of that year, plaintiff moved to Salt Lake City and into the home of defendant's parents, where defendant and the children were living. Defendant had been paying her parents $200 per month as a contribution toward the family's expenses and continued to do so. Plaintiff produced four checks of $100 each which he paid to defendant's parents in addition to the amounts paid by defendant. During this period of time, defendant was working and apparently allowed her funds to be commingled with plaintiff's. In September, 1976, the parties purchased a home and took title in their names, as husband and wife, and as joint tenants. A down payment of $5,000 was paid, mostly out of the plaintiff's funds but the evidence is conflicting as to the amount each party paid.[3] Plaintiff moved out of the house in December, 1976, and defendant and the children continued living there. Plaintiff continued to pay the mortgage payments until November or December, 1977, at which time he brought this action. Plaintiff claims the mortgage payments as payments of child support, while claiming ownership of the house.

Plaintiff contends that defendant, or Recovery Services on her behalf, waived accrued alimony and child support payments, and that plaintiff is therefore estopped to claim the unpaid amounts. Secondly, plaintiff contends that he paid not $7,024 (as noted infra) but $28,000 toward the support of plaintiff and the children for which he should have credit against the arrearages.

The Court found that neither defendant nor anyone acting on her behalf ever represented to plaintiff that alimony and child support payments could be paid in any way except by direct payment to defendant or a government agency to be transferred to defendant, nor had defendant or anyone acting on her behalf ever represented to plaintiff that accrued support payments would be forgiven or in any way compromised. The Court further found that plaintiff had paid only $7,024 as child support under the decree, and that defendant had received $1,544 in unreimbursed assistance from the State of Utah from approximately December, 1972 through October, 1973.

■ This being an equitable proceeding,[4] it is the prerogative of this Court to review the facts as well as the law,[5] but we do not overturn the District Court's findings unless the evidence clearly preponderates against them.[6]

In order to prevail on his theory of estoppel, plaintiff must prove that defendant, by her representations or actions led plaintiff to believe he need not pay alimony or child support, and that plaintiff, in reliance on said representations, changed his position to

---

3. The Court made no finding of fact with regard to these funds, but in its conclusions of law, allowed the $5,000 down payment to plaintiff as a credit against alimony.

4. *Harding v. Harding*, 26 Utah 2d 277, 488 P.2d 308 (1971).

5. Constitution of Utah, Art. VIII, Section 9 states in part: "In equity cases the appeal may be on questions of both law and fact . . ."

6. *Harding v. Harding*, supra, note 4.

his detriment.[7] In such a case, enforcement of the decree creates a hardship and injustice to plaintiff, and defendant would be estopped to deny her own misrepresentations, and estopped from claiming unpaid support.

But plaintiff did not present any evidence that defendant agreed to waive unpaid alimony and child support payments or to reduce such payments. He testified that the parties never had any conversations concerning the subject except in a "general way." He did testify that defendant promised that she would not have him arrested if he came to Salt Lake City to see the children,[8] in 1972, and had said she did not want to "hassle" him; that she only wanted him to take care of the children. That was the extent of plaintiff's evidence to support an equitable estoppel. Plaintiff also contends that Recovery Services compromised defendant's claims. Plaintiff's testimony concerning his alleged conversations with Recovery Services are equally as tenuous as the rest of his testimony, and does not show any basis to support this proposition. Nor does a letter from Recovery Services to him show any such compromise.

■ We find *no* evidence that defendant or Recovery Services made implicit or explicit statements on which plaintiff could reasonably rely to the effect that accrued but unpaid support payments were waived. Nor was plaintiff misled by defendant's conduct in attempting a reconciliation. Plaintiff testified that he moved to Utah to be with his children, and moved in with defendant because he had no place else to go. He testified that they did not plan to remarry. And he did not testify that he

moved to Utah relying on any promise made by defendant. Again, plaintiff presented no evidence of any representations or actions on the part of defendant or on the part of anyone acting in her behalf, by which a reasonable person would be led to believe that unpaid support payments would be waived. The Court did not err in finding that there was no waiver or acquiescence and that the principles of equitable estoppel do not apply.

■ We are also not persuaded that defendant is guilty of laches, especially in view of plaintiff's actions in concealing himself as noted ante, for the purpose of defeating defendant's claims.[9] The evidence shows that defendant took steps to locate plaintiff during this period of time and the lack of prosecution cannot be said to be due to her dilatoriness.

Plaintiff next contends that from the time of the divorce to the time this action was brought he made certain voluntary expenditures in behalf of defendant and the children and should be given credit for such payments against the alimony and support arrearages.

■ Plaintiff is not entitled, however to credit for expenditures made on behalf of the children or defendant which do not specifically conform to the terms of the decree.[10] To do so would permit plaintiff to vary the terms of the decree and to usurp from defendant the right to determine the manner in which the money should be spent.[11] Only if the defendant has consented to the plaintiff's voluntary expenditures as an alternative manner of satisfying his alimony and child support obligation, can

---

7. *Larsen v. Larsen*, 5 Utah 2d 224, 300 P.2d 596 (1956). See also *J. P. Koch, Inc. v. J. C. Penney Company, Inc.*, Utah, 534 P.2d 903 (1975).

8. It is interesting to note that plaintiff lists as one of the detriments which he suffered as a result of "changing his position" by coming to Salt Lake City, the fact that be became embroiled in these proceedings. Plaintiff is the plaintiff, after all. It is *his* petition which embroiled him in these proceedings.

9. See *Gaskill v. Neal*, 77 Idaho 428, 293 P.2d 957 (1956).

10. *Stanton v. Stanton*, 30 Utah 2d 315, 517 P.2d 1010 (1974); *Harris v. Harris*, 14 Utah 2d 96, 377 P.2d 1007 (1963). See also 47 A.L.R.3d 1031 and cases cited therein.

11. *Openshaw v. Openshaw*, 86 Utah 229, 42 P.2d 191 (1935).

plaintiff receive credit for such expenditures.[12]

Plaintiff testified that during 1971 and 1972, while defendant was living in California, plaintiff sent money to his mother, in installments totaling $4,350 to be used for the support of his children (plaintiff introduced checks payable to his parents during this time of only $750). Plaintiff's mother testified that she spent all of that money to purchase items which she gave to the children. Plaintiff argues that since defendant accepted these items from his mother, his unpaid support obligations should be credited accordingly. There is no evidence in the record that defendant consented to accept the gifts given to the children in lieu of amounts plaintiff was obligated to pay under the divorce decree or even that defendant was made aware that it was plaintiff's money which was used to purchase the gifts. Defendant testified that plaintiff's mother had given the children only such gifts at their birthdays and Christmas which grandparents usually give their grandchildren.

Other amounts for which plaintiff claims credit were so uncertain as to amount or actual expenditure as to be highly speculative, and were paid out of either a joint checking account which he had with defendant or his own account into which defendant deposited her paychecks during that period of time when the parties attempted reconciliation. Plaintiff has not met his burden of proving that these expenditures were made by him. We therefore do not find that the evidence clearly preponderates against the Court's finding that plaintiff paid only $7,024 in child support under the decree.

■ Plaintiff also argues that alimony and child support accruing during the time plaintiff, defendant and the children lived together in a good faith yet unsuccessful attempt at reconciliation should be abated under the rationale of the Colorado case of

*In re Peterson.*[13] The Colorado case, however, was based on evidence that the defendant father had supported the family during the reconciliation period. Here, the evidence is otherwise. For nine of the eleven months that this family lived together they resided in the home of defendant's parents, who were purchasing all of the food, and providing the home. During this nine month period, defendant paid her parents a total of $1,400, while plaintiff paid them a total of $400. Plaintiff testified that at the time of the hearing he was expending $150 per month for his own food. It is clear, therefore, that plaintiff did not even support himself during this reconciliation period, and he should not receive credit for support not in fact made.

■ On cross appeal, defendant argues that the District Court erred in giving plaintiff credit against his accrued and unpaid alimony obligations in the amount of $5,000 representing the down payment on the house purchased by the parties. Plaintiff cannot, and does not, resist this argument, as he testified that he never intended that the down payment be considered as payment in satisfaction of his obligations to defendant, and he continues to insist that the house was purchased with his money and belongs to him. In view of this evidence the Court erred in awarding this credit.

Affirmed as to all matters except that relating to defendant's cross appeal, which is reversed. Remanded for entry of judgment consistent with this opinion. Costs to defendant.

CROCKETT, C. J., and MAUGHAN and HALL, JJ., concur.

STEWART, J., does not participate herein.

---

12. See e. g. *Tescher v. Tescher,* 491 P.2d 82 (Colo.App.1971); *Ediger v. Ediger,* 206 Kan. 447, 479 P.2d 823 (1971); *Hagen v. Hagen,* 193 Or. 369, 238 P.2d 747 (1951).

13. 572 P.2d 849 (Colo.App.1977).