Ted L. CANNON, Salt Lake County Attorney, Plaintiff and Respondent,

v.

Clair M. GARDNER, Salt Lake County Surveyor Elect, Defendant and Appellant.

No. 16490.

Supreme Court of Utah.

May 2, 1980.

---

5. *Town & Country Disposal, Inc. v. Martin*, Utah, 563 P.2d 195 (1977).

Kent Shearer of Mock, Shearer & Carling, Salt Lake City, for defendant and appellant.

Ted L. Cannon, Salt Lake County Atty., David L. Wilkinson, Chief Deputy County Atty., Salt Lake City, for plaintiff and respondent.

CROCKETT, Chief Justice:

At the general election in November 1978, defendant Clair M. Gardner was elected as Salt Lake County Surveyor. Prior to his taking office, the county attorney initiated this action to enjoin him from doing so on the ground that he was not a registered land surveyor.[1] Pursuant to proceedings not material to detail here, District Judge G. Hal Taylor issued a preliminary, and later, a permanent injunction that the defendant be enjoined from taking office as Salt Lake County Surveyor.

The position of the defendant is that the law does not prevent him from serving in the office of county surveyor to which he was duly elected; and that it certainly does not do so with any such certainty as to justify invoking the extraordinary writ prohibiting him from doing so.

The question as to whether the defendant is entitled to take office as county surveyor depends upon which of two statutory provisions takes priority: Chapter 16 of Title 17, which deals specifically with county officers, including the county surveyor, or Chapter 22 of Title 58, which deals with the licensing of land surveyors.

In approaching that problem, it is well to have in mind that if there is any question as to the interpretation or effect to be given a statute, or as to the prefer-

---

1. By the then County Attorney Paul Van Dam, now substituted for by the present County Attorney, plaintiff Ted L. Cannon.

ence to be given statutes of similar import, it is appropriate to look to the circumstances of their origin, and their purpose, and also to what has been done in acceptance and practice as to those statutes.

■ In Chapter 16 of Title 17, U.C.A. 1953, the legislature provided for the essential county officers, including commissioners, treasurer, sheriff, county clerk, auditor, recorder, attorney, surveyor, and assessor. It is plainly evident that it took cognizance that most of our 29 counties were, and for the foreseeable future would likely continue to be, sparsely populated rural areas, with few professionals resident therein. Therefore, as a practical matter, it prescribed no professional qualifications for any of those offices, but allowed the voters freedom to choose those they thought best qualified to serve in such public offices. This is expressly shown in that in the first section of that chapter, Sec. 17–16–1 entitled, Eligibility of Officers, they made no requirement for any professional qualification of any of the above-named county officers.

The conclusion we arrive at herein is further supported by the proposition that Sec. 17–16–3 provides that the county commissioners may consolidate the duties of the above-stated officers. It should be clear beyond the need of expression that where the duties of such offices are so combined, it would be impractical to require the specific professional qualifications for the duties of each office.

Another practical consideration is that in Sec. 17–16–7, it is provided that every such county officer may appoint such deputies and assistants as may be necessary to perform the duties of the office. This seems to be based upon the assumption that the elected official may be primarily an administrator, but with the prerogative of seeing that he has personnel qualified to assist him in discharging his responsibilities.

■ That in fact is what has happened in actual practice. For example, going back at least 20 years in our most urbanized county, Salt Lake, the county surveyor has not been registered as required under Title 58, but has acted as an administrator, seeing that the duties of the office are performed through qualified deputies; and in several of our counties, the presently serving county surveyors are not so registered. To be considered together with what has been said about the history and practical acceptance and application of the statute is the proposition that statutes relating to a specific subject (county officers, including county surveyor) should be given preference over those dealing more generally with the subject (that of licensing all persons who hold themselves out as land surveyors).[2]

The fact that the legislature has not intended that county officers, including the county surveyor, must have professional credentials in the field of their respective duties is given further emphasis by the fact that in 1957, our legislature provided that no person should be elected to or serve in the office of county attorney without being duly licensed to practice law.[3] That enactment providing for professional qualifications for the county attorney is significant. It shows that the legislature does not leave the professional requirement to be implied from the mandate of Sec. 78–51–1 et seq., U.C.A.1953, which require that persons practicing law must be licensed. But when it intends that county officials (the county attorney) must have such specific qualifications and be licensed, it expressly so provides as it has in Sec. 17–18–4. The maxim "expressio unius est exclusio alterius" is applicable.

To be weighed against the foregoing are the provisions of Title 58, U.C.A.1953, upon which the trial court issued the injunction. That title deals with the registration of various professional or specialized services from architects, barbers and contractors through the alphabet to psychologists and veterinarians. Chapter 22 of that title deals with engineers and land surveyors. In harmony with what we regard as the

2. *State v. Burnham*, 87 Utah 445, 49 P.2d 963 (1935).

3. Sec. 17–18–4.

general purpose of that title, Sec. 1 of Chapter 22 states that its purpose is as follows:

> In order to safeguard *life, health, and property, and to promote the public welfare* any person in either *public or private capacity* practicing or offering to practice engineering or land surveying, shall hereafter be required to submit evidence that he is qualified so to practice and shall be registered as hereinafter provided; and it shall be unlawful for any person to practice or *to offer to practice* in this state, engineering or land surveying, as defined in the provisions of this act, or *to use* in connection with *his name* or otherwise assume, use *or advertise any title* or description *tending to convey the impression that he is a professional* engineer or *land surveyor,* unless such person has been duly registered under the provisions of this act.

Sec. 20 states that:

> Any person *who shall practice, or offer to practice,* engineering or land surveying in this state without being registered in accordance with the provisions of this act . . . shall be guilty of a misdemeanor.

The fact which gives some ostensible credit to the position of the plaintiff is that the original version of Sec. 1 of Chapter 22, enacted by Chapter 79 S.L.U.1935, relating to land surveyors did not contain the reference to "any person in either public or private capacity" practicing land surveying, but that that language was added in the reenactment of the chapter in Chapter 118 S.L.U.1955; and further, that while the original act exempted various persons including

> *Duly elected or appointed officers* or employees of this state, or of any political subdivision thereof, at the time this act becomes effective and thereafter *until the expiration of their existing terms of office,* who are engaged in the practice of professional engineering or land surveying. [All emphasis herein is added.]

the latter provision was omitted from the 1955 enactment. It is argued that the foregoing indicates a legislative intent that county surveyors, whose duties include the making of surveys of county lines, roads, precincts and school districts and performing all surveying work for the county should be deemed to be performing land surveying in a public capacity and therefore required to be licensed under the provisions of Title 58.

It is to be conceded that this aspect of the position originally essayed by plaintiff with respect to Title 58 is not without a degree of plausibility if attention is focused solely on that chapter and the amendments referred to. It is due to the overlapping of the statutes discussed herein that the problem we confront is fraught with some perplexity. But it is our responsibility to examine both sides of the controversy and to determine on which side the weight of reason, justice and the law preponderates.

■ Notwithstanding the argument just referred to, an examination of the entire Title 58 indicates quite clearly that its general purpose is to provide for the qualification, registration and licensing of persons who hold themselves out to the public as having qualifications in specialized areas which affect the public health, safety or welfare and thus to guard against unqualified persons deluding others into believing that they are competent to render such specialized services. Particularly, it will be seen that Chapter 22, relating to land surveyors, is focused to that general purpose. Consequently, upon our weighing of the various considerations discussed in this decision, it is our opinion that the general purpose of the provisions of Title 58 was intended to regulate those holding themselves out to the public as land surveyors, and should not be given the effect of preventing one elected as county surveyor from taking his oath and performing the duties of that office.[4]

---

**4.** We decide as indicated herein notwithstanding the reliance placed on the licensing statutes Sec. 58–22–1 et seq. and amendments thereto emphasized on behalf of plaintiff; and also in awareness of the case of *State ex rel. Landis v. Ward,* 117 Fla. 585, 158 So. 273 (1934).

There is a further matter of some importance to be considered as bearing on the problem herein and supportive of our conclusion. A principle which is foundational to our system is that the inherent powers of government reside in the people. This is given expression in the right to vote, and thus to choose the public officials who will serve them; and the correlative right of citizens to aspire to public office and serve therein if so chosen.[5] It is generally held that statutes dealing with that subject should receive a liberal construction in favor of assuring the right to exercise freedom of choice in selecting public officials and also the right to aspire to and hold public office.[6] Correlated to and supportive of that proposition, there is a presumption in favor of eligibility of one who has been so chosen and elected to public office, and any doubts as to such eligibility should be resolved in his favor.[7]

On the basis of the various considerations discussed herein as to the eligibility of the defendant as county surveyor under the unrestrictive provisions of Title 17 relating to county officers, as compared to the provisions of Title 58 relating to the general regulation and licensing of persons rendering specialized services, we are not persuaded that there is sufficient reason to believe that the latter was intended to control over the former in such manner as to prevent one duly elected as a county surveyor from taking that office and performing or seeing that the duties of that office are performed.[8] We think the law should not be changed by inference or implication, but should be adhered to as it has been formerly understood and applied; and that if there is to be any change therein, it should be by clearly expressed legislation.

From what has been said herein, it is our conclusion that the injunction against the defendant taking office as county surveyor was improvidently issued and that it should be vacated. No costs awarded.

MAUGHAN and HALL, JJ., concur.

WILKINS and STEWART, JJ., concur in result.

---

5. See *Shields v. Toronto*, 16 Utah 2d 61, 395 P.2d 829 (1964).

6. 67 C.J.S. Officers sec. 11.

7. Id.; *Scharn v. Ecker*, 88 S.D. 255, 218 N.W.2d 478 (1974).

8. By way of comparison, it is noteworthy that none of the elective constitutional officers of the state are required to have any professional qualification, except only the attorney general. See Sections 1 and 2, Article VII, Utah Constitution.