Dawn W. HORNE, Plaintiff
and Respondent,

v.

W. Reid HORNE, Defendant
and Appellant.

No. 860060–CA.

Court of Appeals of Utah.

May 18, 1987.

Richard K. Crandall, Rodney R. Parker, Snow, Christensen & Martineau, Salt Lake City, for defendant and appellant.

Dawn W. Horne, pro se.

Before BILLINGS, GREENWOOD and ORME, JJ.

## OPINION

BILLINGS, Judge:

Defendant appeals from the trial court's entry *nunc pro tunc* of an order distributing property incident to a previously granted divorce. We reverse the district court.

The parties were divorced on January 27, 1984. The divorce action was bifurcated with the four day property division trial to begin on June 19, 1984. On the second day of the trial, June 20, 1984, the parties entered into an oral property settlement agreement on the record. The record reflects the property was to be transferred in order "to equalize the marital assets of the parties."

The court approved the agreement and requested plaintiff's counsel to prepare an order reflecting the oral stipulation. Defendant's counsel objected to the prepared order as it did not indicate the transfer was to "equalize the marital assets," language which was determinative as to the tax consequences of the agreement. The court therefore set a hearing on August 8, 1984 to consider the dispute over the tax language.

The dispute over the terms of the agreement is best understood with reference to federal tax law. Prior to July 18, 1984, taxation of marital property settlements depended on the terms of the court's order or the parties' agreement. In *United States v. Davis*, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), the United States Supreme Court held that a transfer of marital property incident to divorce was a sale or exchange, and thus a taxable event. *Id.* at 71, 82 S.Ct. at 1193. This imposed upon the transferring party tax liability for capital gains on the property up to the date of transfer, and provided the recipient party a stepped-up basis in the property reflecting its value as of the date of the transfer. *See* I.R.C. § 1001.

In several revenue rulings after *Davis*, the Internal Revenue Service delineated a now well-recognized exception to the *Davis* rule: if the transaction was an attempt to equally divide marital assets, and this was clearly indicated in the agreement, there was no taxable event within the meaning of *Davis*. *See* Rev.Rul. 74-347, 1974-2 C.B. 26; Rev.Rul. 81-292, 1981-2 C.B. 158. The parties' dispute over the terms to be included in the order relates to whether the agreement constituted a tax free equal division of marital assets or a taxable transfer of property.

While the parties were negotiating over the terms of the order, President Reagan signed into law the Tax Reform Act of 1984, Pub.L. No. 98-369. The Reform Act overruled *Davis* and provided that no gain or loss will be recognized to the transferor in the case of transfers of property incident to a divorce. Further, the Act provided that the basis of the property transferred will carry over and become the basis of the property in the hands of the transferee. Tax Reform Act § 421, adding I.R.C. § 1041 and amending I.R.C. §§ 1015 and 1239. Thus, for plaintiff to receive a stepped-up basis in the property she received as a result of the property settlement agreement, the order must have been entered prior to the effective date of the Reform Act, July 18, 1984, and could not contain language that the transfer was to equalize the marital assets.

Also in this interim period a dispute arose between plaintiff and her counsel. Plaintiff alleged, among other charges of misconduct, that she agreed to the settlement only upon her counsel's representation that she would get the stepped-up basis and his stipulation in court to the contrary was against her instructions.

At the August 8 hearing, the court considered the charges against plaintiff's counsel, the dispute over the language to be contained in the proposed order, and whether the order should be entered *nunc pro tunc* to the date of June 20, 1984. Plaintiff claimed that unless she received the stepped-up basis, the property division was inequitable and unacceptable. Defendant contended the parties' oral stipulation expressly included language that the agreement was an equal division of the parties' assets in order to insure that the transfer of property was not a taxable event. The record supports defendant's contention. The district court eliminated any reference in the decree to tax consequences and on August 17, 1984 entered its Order of property division *nunc pro tunc* to June 20, 1984.

The effect of the court's ruling was that the transfer of property was a taxable event because there was no specific language to the contrary, and the plaintiff received a stepped-up basis in the property transferred. Plaintiff then withdrew all charges of misconduct against her counsel. On appeal defendant alleges the court erred in entering the decree *nunc pro tunc*.

## I.

The court has the power to act *nunc pro tunc*—to do an act upon one date and make it effective as of a prior date. *Mitchell v. Overman*, 103 U.S. (13 Otto) 62, 64–65, 26 L.Ed. 369 (1881); *Kettner v. Snow*, 13 Utah 2d 382, 384, 375 P.2d 28, 30 (1962). The common law power of *nunc pro tunc* allows the court to correct errors or supply omissions so the record accurately reflects that which in fact took place. *Kettner*, 13 Utah 2d at 384, 375 P.2d at 30. Recently, the Utah Supreme Court considered the application of the doctrine of *nunc pro tunc* in a divorce action:

A motion nunc pro tunc is used to make the record speak the truth; it may not be used to correct the court's failure to speak. In other words, the function of a nunc pro tunc order is not to make an

order now for then, but to enter now for then an order previously made.

*Preece v. Preece*, 682 P.2d 298, 299 (Utah 1984) (citations omitted).

In *Preece*, the trial court read its findings of fact and conclusions of law and decree of divorce into the record following a trial between the parties. The husband's counsel objected to the attorneys' fees included in the proposed findings of fact and conclusions of law but submitted the matter to the court for resolution. Prior to the court's signing of the decree, the husband died of a heart attack. To prevent the wife from receiving a portion of her husband's estate, the trial court entered the decree *nunc pro tunc* as of the trial date. The supreme court vacated the trial court's action despite the harsh result.

The *Preece* court held the entry of the decree *nunc pro tunc* was improper because until the decree was signed the trial court retained the ability to alter its terms, which meant there had not been a final resolution of the matter at the date of the trial. Specifically, the court stated:

The determinative factor which prevents the use of nunc pro tunc in the instant case is the lack of signature on a decree and the attendant ability of the court to alter the terms of the decree until it was signed and entered. Additionally, the dispute over the substantive issue of attorney fees (in spite of respondent's counsel's indication that he would leave its resolution to the trial court) points to a lack of finality. Because the judge's oral announcement was not reduced to a signed written decree prior to the death of Mr. Preece, a previously made order did not exist and therefore did not afford the court the right to employ the nunc pro tunc device.

However, even if the oral announcement were considered a previous order, nunc pro tunc was misapplied here. A nunc pro tunc order should be the reflection of a previously made ruling. The court had orally announced that the decree was "to become final upon signing." By making it effective as of the trial date rather than upon signing, the court al-

tered its previous ruling. It did not merely reflect its previous ruling. *Preece,* 682 P.2d at 300.

Subsequent to the trial in *Preece,* the Utah Legislature enacted a statute committing broad discretion to trial courts in granting *nunc pro tunc* orders in domestic relations matters:

> A court having jurisdiction may, upon its finding of good cause and giving of such notice as may be ordered, enter an order nunc pro tunc in a matter relating to marriage, divorce, legal separation or annulment of marriage.

Utah Code Ann. § 30–4a–1 (1984).

In support of his contention that the court erred in entering the decree *nunc pro tunc* to June 20, 1984, defendant argues this statutory provision applies only to marital status and not to the property division aspect of a divorce. Further, defendant contends that, even if the statutory language is interpreted to deal with issues beyond marital status, the statute does not expand the limited use of *nunc pro tunc* at common law as delineated in *Preece.* Finally, defendant claims that, regardless of whether the statute otherwise applies, the facts of this case do not constitute "good cause" for entry of the court's Order *nunc pro tunc.*

## II.

■ Defendant argues Utah Code Ann. § 30–4a–1 (1984) is limited to matters involving marital status. In construing legislative enactments, we assume that each term in the statute was used advisedly. *West Jordan v. Morrison,* 656 P.2d 445, 446 (Utah 1982). This Court therefore interprets and applies the statute according to its literal wording unless it is unreasonably confused or inoperable. *Id.*

■ The *nunc pro tunc* statute expressly states the court may "enter an order nunc pro tunc *in a matter relating to* marriage, divorce, legal separation or annulment of marriage." Utah Code Ann. § 30–4a–1 (1984) (emphasis added). By its wording, the statute applies to any and all matters relating to divorce proceedings. Had the legislature intended the statute to be limited to status, it could have easily so stated.[1]

Defendant asserts the legislative history of this statute demonstrates an intent that the statute apply only in cases of marital status, such as where a decree of divorce is prepared but not signed and the parties subsequently remarry. The Utah Supreme Court has frequently stated that in construing legislative enactments, courts must give effect to the legislature's underlying intent. *See, e.g., Millett v. Clark Clinic Corp.,* 609 P.2d 934, 936 (Utah 1980).

The legislative history indicates the bill was passed "because there have been a number of cases of obvious injustice that could be corrected by the entry of *nunc pro tunc* decrees by the court." *Tr. of 3rd Reading of House Bill 218,* Jan. 27, 1983, comments of Rep. Lorin Pace. Representative Pace, sponsor of the Bill, gave a variety of diverse examples wherein entry of an order *nunc pro tunc* might be appropriate including: where the parties, believing they were divorced, entered into subsequent marriages (status); where a death occurred after a divorce proceeding had been heard but before the order had been filed (status incident to property division); and where there was a clerical error in filing the divorce papers (status and/or property division). *Id.* The legislative history includes examples of both status and property divi-

---

1. For example, Cal. Civil Code § 4515 (West 1970), prior to its 1983 amendment, stated that upon the filing of a final judgment *nunc pro tunc* "the parties to such action shall be deemed to have been restored to the *status of single persons* as of the date affixed to such judgment." *Id.* (emphasis added). *See In Re Marriage of Frapwell,* 53 Cal.App.3d 479, 485, 125 Cal.Rptr. 878, 881 (1975) (where no second marriage was involved, entry of a divorce decree *nunc pro tunc* was inappropriate).

Similarly, the Washington statutory scheme allowing for entry of final divorce decrees *nunc pro tunc* contains limiting language that upon entry of such decree, "the parties to such action shall be deemed to have been restored to the *status of single persons* as of the date affixed to such judgment." Wash.Rev.Code Ann. § 26.09.-290 (1973) (emphasis added). *See Pratt v. Pratt,* 99 Wash.2d 905, 665 P.2d 400 (1983) (entry of decree *nunc pro tunc* proper only when necessary to validate a subsequent marriage).

sion problems which demonstrate a need for the legislation. Furthermore, the legislative history reveals an intent to give the courts broad discretion to enter orders *nunc pro tunc* in domestic proceedings where an obvious injustice would otherwise result.

Our review of the statutory language and legislative history of Utah Code Ann. § 30–4a–1 (1984) reveals no intent on the part of the legislature to limit the scope of the *nunc pro tunc* statute only to cases involving the marital status of the parties.

### III.

Defendant further contends that the statute does not eliminate the common law requirement of a previously made final order as discussed in *Preece v. Preece*, 682 P.2d 298 (Utah 1984). This contention is contradicted by sound principles of statutory construction and by the legislative history of the *nunc pro tunc* act.

■ Statutes are not to be construed as effecting any change in the common law beyond that which is clearly indicated. However, where a statute is in derogation of the common law, and is also remedial in nature, the remedial application should be construed so as to give effect to its purpose. *Terry v. Lincscott Hotel Corp.*, 126 Ariz. 548, 617 P.2d 56, 60 (1980); *see Marsland v. Pang*, 701 P.2d 175, 192–93 (Hawaii App.1985); *cf. Hansen v. Utah State Retirement Bd.*, 652 P.2d 1332, 1337 (Utah 1982).

■ A literal reading of § 30–4a–1 indicates a legislative intent to change the standard for entry of *nunc pro tunc* orders in domestic proceedings from requiring a previously made final order as delineated by common law, to requiring a finding of "good cause." As pointed out by Justice Stewart in his dissent in *Preece:*

The Legislature has recently enacted a statute that commits broad discretion to trial courts in granting *nunc pro tunc*

orders in domestic relations matters. . . .

All that need be shown is "good cause."

*Preece v. Preece*, 682 P.2d 298, 302 (Stewart, J., dissenting) (citations omitted).

Further, the legislative history reveals the statute was remedial in nature. The purpose of the statute was described by Rep. Lorin Pace as follows:

And the reason this bill is before us is because there have been a number of cases of obvious injustice that could be corrected by the entry of nunc pro tunc decrees by the court. . . .

*Tr. of 3rd Reading of House Bill 218*, Jan. 27, 1983.

Moreover, the examples given by Rep. Pace during the Bill's third reading indicate an intent to overrule the common law approach to *nunc pro tunc* orders which was causing "obvious injustice." Indeed, Rep. Pace made specific reference to the *Preece* -type situation where at common law, due to a husband's death occurring after a divorce proceeding has been heard, but before the order has been entered, a wife is entitled to a widow's portion of the estate rather than the provisions agreed to in the divorce proceeding. Clearly the statute sought to remedy the injustice caused by the common law approach.[2]

### IV.

Having found that Utah Code Ann. § 30–4a–1 (1984) allows the granting of *nunc pro tunc* orders in domestic relations matters upon a finding of "good cause," we now face the question of whether the trial court's entry of his Order *nunc pro tunc* in this case was based upon "good cause."

■ In defining "good cause" for purposes of Utah Code Ann. § 30–4a–1 (1984), it must be borne in mind that the legislative history indicates an intention to give the courts wide discretion to prevent "obvious injustices." The meaning of "good cause" must be determined on a case by case basis, in light of all of the surrounding circumstances, as equity and justice re-

---

**2.** The analysis and holding in *Preece v. Preece*, 682 P.2d 298 (Utah 1984) therefore has been

statutorily overruled.

quire. *See Wilson v. Morris,* 369 S.W.2d 402, 407 (Mo.1963); *In Re Estate of Corbett,* 203 Neb. 392, 279 N.W.2d 89, 95 (1979); *cf. Wray v. Folsom,* 166 F.Supp. 390, 394 (W.D.Ark.1958); *Daly v. Daly,* 533 P.2d 884, 887 (Utah 1975) (Crockett, J., dissenting in part).

In the case before us, defendant contends there was no basis for a finding of good cause and thus the entry of the order *nunc pro tunc.* The district court expressly found:

> The Court finds that with the recent unexpected change in the tax laws that good cause exists to grant Plaintiff's Motion to Compel Entry of Findings of Fact and Conclusions of Law and Order Nunc Pro Tunc as of June 20, 1984. The court further finds that the Defendant was given proper notice of such Motion.

If the court had entered its order *nunc pro tunc* to give effect to the parties' expressed intentions prior to the change in the tax laws, good cause no doubt would exist. Our review of the record, however, reveals the contrary. The agreement reached between the parties on June 20 expressly states: "[The property] will be transferred to her as an exchange item to equalize the marital assets of the parties in this matter." In entering the order prior to the effective date of the Reform Act, and without the essential and agreed upon tax language, the court either misunderstood how critical the tax language was to the parties' agreement or substituted its own judgment for that of the parties, and it misused its *nunc pro tunc* power to accomplish that aim. Furthermore, a fair reading of the record indicates that in reaching its decision, the court improperly considered plaintiff's offer to drop the misconduct charges against her counsel in return for entry of the order *nunc pro tunc.* Such conduct does not constitute "good cause" for purposes of Utah Code Ann. § 30–4a–1 (1984).

Reversed and remanded for entry of the order of property division effective August 17, 1984. No costs.

GREENWOOD and ORME, JJ., concur.