**Wanda Marie Sackett BAGSHAW,
Plaintiff and Respondent,**

v.

**Joseph Arthur BAGSHAW, Defendant
and Appellant.**

No. 880647–CA.

Court of Appeals of Utah.

March 8, 1990.

Randall T. Gaither, Salt Lake City, for defendant and appellant.

John Spencer Snow, Salt Lake City, for plaintiff and respondent.

Before DAVIDSON, BENCH and BILLINGS, JJ.

BILLINGS, Judge:

Appellant, Joseph Arthur Bagshaw ("Husband"), appeals the trial court's order awarding respondent, Wanda Marie Sackett Bagshaw ("Wife"), $19,400 in alimony arrearages owing under a divorce decree entered on January 10, 1973. We affirm.

Wife filed a complaint for divorce seeking $100 per month in support for each of the couple's two children and $200 per month in alimony. Husband, unrepresented by counsel, agreed that a default divorce could be entered against him on Wife's complaint. Husband now claims he cannot read and he signed the divorce papers based on Wife's alleged representations that she wanted only child support and some furniture.

A divorce decree was entered on January 10, 1973, which included the amounts of child support and alimony requested in the complaint. After the divorce, Husband learned of the alimony provision and filed an Order to Show Cause seeking modification of the decree to terminate the alimony award. The matter was set for hearing on

November 28, 1973. On the day of the scheduled hearing, Husband, his second wife, and his attorney met with Wife's attorney to discuss the case. Wife was not present because of threats made to her by Husband. Husband contends that at this meeting, Wife, through a telephone conversation with her attorney, agreed to the termination of alimony. Wife contends she never agreed to a termination of alimony. Neither attorney who participated in this meeting has any recollection of the events.

A minute entry reflected that a stipulation was reached between the parties and the matter was continued pending a written stipulation and order. However, no stipulation was ever entered into the record. Husband asserts he thought the issue was resolved even though he requested a copy of the papers and admits he never received those papers.

From November 28, 1973, to February 25, 1988, Wife did not seek to enforce the alimony order. Because she was on public assistance, Wife had assigned her right to payments from Husband to the Office of Recovery Services, which only collected child support payments from Husband.

On February 25, 1988, Wife filed an Order to Show Cause seeking judgment for alimony arrearages. Husband requested the court to enforce the previous alleged oral agreement terminating alimony by entering a nunc pro tunc order as provided for in Utah Code Ann. § 30–4a–1 (1989), or, in the alternative, to find that Wife was estopped from collecting the alimony because of her conduct.

The trial court found that no enforceable stipulation had been reached to eliminate alimony. The court further found that Wife had not cohabited since the divorce nor should she otherwise be estopped from collecting the arrearages. The court awarded Wife $19,400 in arrearages and ordered both parties to pay their own attorney fees and costs.

Husband appeals, claiming the trial court erred in (1) failing to properly apply Utah Code Ann. § 30–4a–1 (1989) to this action, and (2) finding that Wife was not estopped from collecting the alimony arrearages. Wife cross-appeals, requesting her attorney fees incurred on appeal.

ENFORCEABILITY OF STIPULATION

The trial court refused to enforce Husband and Wife's alleged oral agreement to terminate alimony as of 1973. The court relied upon a procedural rule relevant to the enforceability of in-court stipulations, concluding: "This court finds that there was neither a stipulation between the parties as evidenced by a signed writing nor an agreement of the parties stated in court before a judge on the record as required by *Brown v. Brown,* 744 P.2d 333 (Utah, App. 1987)." [1] In essence, the trial court found that any alleged "stipulation" of the parties to terminate alimony in 1973 was not in writing nor entered into in open court as required by Code of Judicial Administration Rule 4–504(8) [2] and was therefore unenforceable.

We believe the trial court's reliance on rule 4–504(8) was misplaced. First, there is nothing in the record to

---

1. We note there is a conflict within this court concerning whether all settlement agreements are "stipulations" covered by the Code of Judicial Administration Rule 4–504(8). In *Brown v. Brown,* 744 P.2d 333 (Utah Ct.App.1987), this court found that stipulations must be in writing or submitted in open court to be enforceable, *id.* at 335, relying, in part, on the predecessor to rule 4–504(8). In *Zions First Nat'l Bank v. Barbara Jensen Interiors, Inc.,* 781 P.2d 478 (Utah Ct.App.1989), another panel of this court found that certain settlement agreements need not be in writing to be enforceable. *Id.* at 480 n. 1. We agree with Judge Bench's dissent in *Zions* that the two cases are not distinguishable. Because of our holding, we need not directly con-

sider this issue. However, the author agrees with the majority in *Zions* that all agreements settling pending litigation need not meet the procedural requirements of rule 4–504(8) in order to be enforceable.

2. Rule 4–504(8), the substantially similar successor to Utah R.Prac.Dist. & Cir.Ct. 4.5(b), provides that "[n]o orders, judgments, or decrees based upon stipulation shall be signed or entered unless the stipulation is in writing, signed by the attorneys of record for the respective parties and filed with the clerk or the stipulation was made on the record."

establish that this procedural rule was in effect at the time of the putative stipulation in 1973.[3] This court will not apply an amended rule of procedure if it impairs the rights of a party. *Jensen v. Eames,* 30 Utah 2d 423, 519 P.2d 236, 238 (1974).

Furthermore, "[u]nder general rules of statutory construction, where two statutes treat the same subject matter, and one statute is general while the other is specific, the specific provision controls." *Floyd v. Western Surgical Assocs., Inc.,* 773 P.2d 401, 404 (Utah Ct.App.1989); *see also State v. Hamblin,* 676 P.2d 376, 378 (Utah 1983); *Cannon v. Gardner,* 611 P.2d 1207, 1209 (Utah 1980); *State v. Burnham,* 87 Utah 445, 49 P.2d 963, 965 (1935).

■ Husband requested the trial court in a domestic case to enter an order nunc pro tunc to enforce the alleged prior oral agreement of the parties that alimony would terminate. In the marital law area, Utah permits courts to enter orders nunc pro tunc upon a showing of good cause:

> A court having jurisdiction may, upon its finding of good cause and giving of such notice as may be ordered, enter an order nunc pro tunc in a matter relating to marriage, divorce, legal separation or annulment of marriage.

Utah Code Ann. § 30–4a–1 (1989).

■ We believe the domestic nunc pro tunc statute is the specific statute intended to cover this situation, not the more general procedural rule on written stipulations found in rule 4–504(8). If we were to find otherwise, rule 4–504(8) would, in effect, repeal the domestic nunc pro tunc statute, section 30–4a–1, as it would seldom apply.

■ Although the trial court focused on the general procedural enforceability of a stipulation rather than on whether a nunc pro tunc order was appropriate under the facts presented, this court may affirm "if the trial court's decision can be sustained on any proper legal basis." *Taylor v. Estate of Taylor,* 770 P.2d 163, 169 (Utah Ct.App.1989). Thus, we must determine if

the findings of the court below or the undisputed evidence in the record support a decision not to enter a nunc pro tunc order under section 30–4a–1.

■ In *Horne v. Horne,* 737 P.2d 244 (Utah Ct.App.1987), this court interpreted the scope of Utah Code Ann. § 30–4a–1 (1989). The *Horne* court stated that "the legislative history reveals an intent to give the courts broad discretion to enter orders *nunc pro tunc* in domestic proceedings where an obvious injustice would otherwise result." *Id.* at 248. Thus, the inquiry is an equitable one.

The *Horne* court held section 30–4a–1 eliminated the common law nunc pro tunc requirement of a previously-entered final order and concluded that all that is required under the statute is a finding of "good cause." *Id.* The court stated that "[t]he meaning of 'good cause' must be determined on a case by case basis, in light of all of the surrounding circumstances, as equity and justice require." *Id.* at 248–49.

■ While section 30–4a–1 has a broad remedial scope, it does not abrogate all the common law trappings of nunc pro tunc law. At common law, nunc pro tunc allowed a court to correct *its* earlier error or supply *its* omission so the record accurately reflected that which in fact had taken place. *Preece v. Preece,* 682 P.2d 298, 299 (Utah 1984); *Horne,* 737 P.2d at 246. Cases in which courts traditionally have applied the nunc pro tunc doctrine fall into two categories:

> (1) those in which one of the parties died after the submission of the case to the lower court for its decision, but before the actual rendition of judgment; and (2) those in which a judgment has in fact been rendered by the lower court, but the clerk has failed to perform the ministerial function of entry.

6A J. Moore, *Moore's Federal Practice* ¶ 58.08 (1989).

The second category is based upon the principle that "where the delay in render-

---

**3.** Nor is there evidence in the record that the prior Utah R.Prac.Dist. & Cir.Ct. 4.5(b) was in effect.

ing judgment or decree arises from the act of the court, that is, where the delay has been for its convenience, or has been caused by the multiplicity or press of business or the intricacy of the questions involved, or of *any other cause not attributable to the laches of the parties,* but within the control of the court; the judgment or the decree may be entered retrospectively...." *Mitchell v. Overman,* 103 U.S. 62, 64–65, 26 L.Ed. 369 (1881) (emphasis added); *see also* 6A J. Moore, *Moore's Federal Practice* ¶ 58.08 (1989).

■ These general principles of the common law of nunc pro tunc are relevant, if not controlling, in a determination of good cause under section 30–4a–1. In this case, the court did not make the clerical error, but taking the facts in the light most favorable to the Husband, Husband did. It is undisputed that the court never received the written stipulation mentioned in the minute entry. Thus, this alone could support a finding of lack of "good cause" under section 30–4a–1.

■ Furthermore, a nunc pro tunc order must, even under the more liberal requirements of section 30–4a–1, still be entered for the purpose of making the record reflect what actually was meant to happen at a prior time. Thus, in determining good cause in our case, the threshold inquiry is (1) did Husband and Wife clearly agree that alimony would be terminated in 1973, and (2) was the court prepared in 1973 to enter an order based upon that agreement? The court found that "[t]he parties did not enter into any enforceable stipulation to modify the decree of divorce to terminate alimony by the defendant to the plaintiff," and "[t]here was no termination of alimony by reason of the actions of the plaintiff." Again, the court's findings support a conclusion that the "good cause" required for the entry of an order nunc pro tunc under section 30–4a–1 was not present.

Thus, although the magic words "good cause" were not recited by the court in its findings, the sum and substance of the court's ruling and the undisputed evidence in the record indicate that no "obvious injustice" resulted from enforcing the prior alimony order as entered in 1973.

## ESTOPPEL

■ Husband argues in the alternative that Wife should be estopped from collecting the alimony arrearages because she cohabited after the divorce and unreasonably delayed the filing of her action to collect alimony arrearages. In *Ross v. Ross,* 592 P.2d 600 (Utah 1979), the court recognized the theory that a spouse may be estopped from collecting back installments, but refused to apply the doctrine. The court set out the requirements that must be met before a court will apply the doctrine:

In order to prevail on his theory of estoppel, plaintiff must prove that defendant, by her representations or actions led plaintiff to believe he need not pay alimony or child support, and that plaintiff, in reliance on said representations, changed his position to his detriment. In such a case, enforcement of the decree creates a hardship and injustice to plaintiff, and defendant would be estopped to deny her own misrepresentations, and estopped from claiming unpaid support.

*Id.* at 602–03 (footnote omitted).

The trial court heard evidence and found that Wife did not engage in unlawful cohabitation after the entry of the divorce decree nor did her actions otherwise constitute a basis for the termination of alimony. The trial court's findings support a conclusion that Wife should not be estopped from collecting alimony arrearages and we therefore find no error.

## ATTORNEY FEES

■ Finally, Wife asserts she has no resources to meet her legal expenses and requests attorney fees incurred on appeal. We may order either party to pay attorney fees under Utah Code Ann. § 30–3–3 (1989), and this includes attorney fees incurred on appeal. *Riche v. Riche,* 784 P.2d 465, 470 (Utah Ct.App.1989). *See, e.g., Carter v. Carter,* 584 P.2d 904, 906 (Utah

1978); *Maughan v. Maughan,* 770 P.2d 156, 162–63 (Utah Ct.App.1989).

Two requirements must be met before a court will award attorney fees: "the trial court must find the requesting party is in need of financial assistance and that the fees requested are reasonable." *Riche,* 784 P.2d at 470; *see generally Newmeyer v. Newmeyer,* 745 P.2d 1276, 1279–80 (Utah 1987); *Beals v. Beals,* 682 P.2d 862, 864 (Utah 1984); *Andersen v. Andersen,* 757 P.2d 476, 480 (Utah Ct.App.1988).

The trial court heard evidence on need and chose not to award Wife attorney fees and costs. Wife does not challenge the court's denial of attorney fees below nor does she assert on appeal any facts in addition to those presented to the trial court concerning her financial need. She does not claim her situation has deteriorated since the trial as the appellant did in *Riche.* Furthermore, wife was awarded a substantial judgment for arrearages in alimony which could be used to satisfy her fees. Based on the foregoing, we deny Wife's request for attorney fees incurred on appeal.

In conclusion, we find that no "good cause" exists to order the termination of Wife's alimony as of 1973 under the domestic nunc pro tunc statute, section 30–4a–1. Further, we find that the trial court did not err in its decision that Wife should not be estopped from collecting her alimony arrearages and, thus, we affirm the trial court's decision awarding Wife $19,400 in alimony arrearages. Finally, we deny Wife's claim for attorney fees incurred on appeal.

DAVIDSON and BENCH, JJ., concur in the result.