2006 UT App 257

**Linda Kay BEHRMAN, Plaintiff and Appellant,**

v.

**Gary Leroy BEHRMAN, Defendant and Appellee.**

No. 20050003–CA.

Court of Appeals of Utah.

June 22, 2006.

---

Ryan D. Tenney, Howard, Lewis & Petersen, Provo, for Appellant.

Frederic A. Jackman, Orem, for Appellee.

Before BENCH, P.J., McHUGH, and ORME, JJ.

## OPINION

BENCH, Presiding Judge:

¶1 Linda Kay Behrman (Wife) appeals the district court's nunc pro tunc order. The order altered the 1996 Amended Order finalizing the divorce between Wife and Gary Leroy Behrman (Husband). We hold that the district court erroneously applied the nunc pro tunc doctrine, and we therefore reverse.

## BACKGROUND

¶2 In 1991, Wife filed a petition for divorce. In April 1993, the district court granted the parties a divorce but concluded "that all other issues raised at trial shall be reserved until such time as the parties sub-

mit the proposed Findings of Fact & Conclusions of Law and a final decision has been rendered by the court." In August 1993, the court entered its decision (August 1993 Decision) and ordered "[c]ounsel for [Husband] ... to prepare appropriate findings of fact and conclusions of law consistent with this order."

¶ 3 Both parties filed various post-trial motions. Wife submitted pleadings claiming that Husband was delinquent on his child support payments and had underpaid his alimony obligations. Wife requested that "consideration be given to the arrearage" in the final order. This post-decree litigation continued for several years. The district court finally settled the disputes in 1996 with Amended Findings of Fact and Conclusions of Law, and the Amended Order (1996 Amended Order). Husband's attorney prepared and submitted both documents.

¶ 4 In the petition for divorce, Wife had claimed that she was "presently unemployed." Throughout the divorce proceedings, Wife sought alimony in a sufficient amount to cover future educational expenses. Wife claimed that Husband "knows that because I gave up my education to put his education first, he can easily recover financially, but I have no means to support myself and get through school." In the August 1993 Decision, the court found that Wife had entered school and "was presently pursuing the education pre-requisites to enter a course of study that will lead to a 4–year Bachelor of Science degree. It is her desire to obtain a one-year clinical care internship and then pursue a thirty (30) month graduate course to obtain a masters degree in anesthesiology." The court ordered alimony of $3000 a month for seven years, presumably based on the time Wife would need to finish her schooling. Then, in the 1996 Amended Order, prepared by Husband's attorney, the court ordered that Wife was entitled to seven years of alimony "commencing with the execution of this Decree."

¶ 5 Husband stopped paying alimony in 2000, seven years after entry of the August 1993 Decision. Wife subsequently filed an Order to Show Cause seeking unpaid alimony and child support, based upon the 1996 Amended Order. Husband responded and asserted that the seven years of alimony awarded in the 1996 Amended Order was a clerical error and that the award actually commenced in 1993, upon entry of the August 1993 Decision.

¶ 6 A domestic relations commissioner addressed the alimony issue and determined that he did not have the authority to overturn the 1996 Amended Order, and subsequently entered an award for alimony arrearages in the amount of $78,750. Husband filed an objection to this order with the district court, requesting that the court invoke the nunc pro tunc doctrine. *See* Utah Code Ann. § 30–4a–1 (1998). He argued that because the August 1993 Decision awarded Wife alimony for seven years based on her schooling needs, the 1996 Amended Order incorporated the August 1993 Decision. Wife asserted that the nunc pro tunc doctrine is procedurally improper and Husband should have filed a petition to modify if he wanted to change the 1996 Amended Order.

¶ 7 The district court granted Husband's nunc pro tunc motion. The court stated that there "was not a word or even a hint that the seven year period was to start in 1996" and therefore concluded that the alimony period ran from 1993 to 2000. Wife now appeals.

## STANDARD OF REVIEW

¶ 8 "Determining whether the trial court properly utilized the legal doctrine of nunc pro tunc to [clarify the provisions of a prior order] presents a question of law which we will review for correctness." *Southwick v. Leone,* 860 P.2d 973, 977 (Utah Ct.App. 1993).

## ANALYSIS

¶ 9 Wife argues that, pursuant to common law, the district court erred in applying the nunc pro tunc doctrine in this case. Husband contends that Wife incorrectly relies on common law principles because a specific statute governs the use of nunc pro tunc in domestic cases. Utah Code section 30–4a–1 provides that "[a] court having jurisdiction may, upon its finding of good cause and giving of such notice as may be ordered,

enter an order nunc pro tunc in a matter relating to marriage, divorce, legal separation or annulment of marriage." Utah Code Ann. § 30–4a–1. The legislative history of this statute "'reveals an intent to give the courts broad discretion to enter orders *nunc pro tunc* in domestic proceedings where an *obvious injustice* would otherwise result.'" *Bagshaw v. Bagshaw*, 788 P.2d 1057, 1060 (Utah Ct.App.1990) (second emphasis added) (quoting *Horne v. Horne*, 737 P.2d 244, 248 (Utah Ct.App.1987)). "The *Horne* court held [that] section 30–4a–1 eliminated the common law nunc pro tunc requirement of a previously-entered final order and concluded that all that is required under the statute is a finding of 'good cause.'" *Id.* (quoting *Horne*, 737 P.2d at 248).

 ¶ 10 But the *Bagshaw* court also clarified that "[w]hile section 30–4a–1 has a broad remedial scope, it does not abrogate all the common law trappings of nunc pro tunc law." *Id.* "At common law, nunc pro tunc allowed a court to correct its earlier error or supply its omission so the record accurately reflected that which in fact had taken place." *Id.* (emphasis omitted). "These general principles of the common law of nunc pro tunc are relevant, if not controlling, in a determination of good cause under section 30–4a–1." *Id.* at 1061. One such principle is that "'where the delay in rendering judgment or decree arises from the act of the court, that is where the delay has been for its convenience, or has been caused by the multiplicity or press of business or the intricacy of the questions involved, or of *any other cause not attributable to the laches of the parties*, but within the control of the court; the judgment or the decree may be entered retrospectively.'" *Id.* at 1060–61 (quoting *Mitchell v. Overman*, 103 U.S. 62, 64–65, 26 L.Ed. 369

(1881)). In *Bagshaw*, "the court did not make the clerical error, but taking the facts in the light most favorable to the Husband, [the] Husband did.... This alone could support a finding of lack of 'good cause' under section 30–4a–1." *Id.* at 1061.

¶ 11 In this case, Husband contends that Wife's award of alimony for seven years commenced in 1993 with the August 1993 Decision. The plain language of the 1996 Amended Order, however, provides otherwise: "[Wife] should be awarded alimony in the sum of $3000.00 per month for seven (7) years, *commencing with the execution of this Decree.*" (Emphasis added.) Husband asserts that any indication from the 1996 Amended Order that the alimony award was to commence in 1996 is merely a clerical error, and thus an obvious injustice would occur by enforcing such error.

 ¶ 12 It is significant that Husband's attorney prepared and submitted the 1996 Amended Findings of Fact and Conclusions of Law and the Amended Order. Husband, by and through his attorney, drafted the alleged error in the 1996 Amended Order stating that the seven years of alimony commence "with the execution of this Decree." *See Jones v. Jones*, 700 P.2d 1072, 1074–75 (Utah 1985).[1] As in *Bagshaw*, Husband caused the alleged error, and therefore "this alone could support a finding of lack of 'good cause' under section 30–4a–1." *Bagshaw*, 788 P.2d at 1061.[2]

 ¶ 13 "Furthermore, a nunc pro tunc order must, even under the more liberal requirements of section 30–4a–1, still be entered for the purpose of making the record reflect what actually was meant to happen at a prior time." *Id.; see also Southwick v.*

---

1. The court in *Jones v. Jones* stated that

 the wife's attorney prepared the inadequate findings of fact she challenges on appeal and the conclusions of law and decree of divorce, all of which the court entered without alteration. Counsel for the wife made no motion to have the trial court amend the findings to include values. The wife cannot come now, albeit through new counsel, and complain of her own failure to include specific property values in the findings of facts. She has waived the claim.

700 P.2d 1072, 1074–75 (Utah 1985) (citation omitted); *see also Stevens v. Stevens*, 754 P.2d 952, 955 n. 1 (Utah Ct.App.1988); *Boyle v. Boyle*, 735 P.2d 669, 671 (Utah Ct.App.1987).

2. Although Wife anticipated that it would only take seven years to complete her schooling, it took her ten years. Thus, she completed her education in 2003, seven years from the 1996 Amended Order. Consequently, we find no "obvious injustice" in enforcing the 1996 Amended Order as written. *Bagshaw v. Bagshaw*, 788 P.2d 1057, 1058 (Utah Ct.App.1990).

*Leone,* 860 P.2d 973, 978 (Utah Ct.App.1993) (holding that "[a] nunc pro tunc order may not be used to show what the court might or should have decided, or intended to decide, as distinguished from what it actually did decide" (quotations and citations omitted)); *Diehl Lumber Transp. Inc. v. Mickelson,* 802 P.2d 739, 742 (Utah Ct.App.1990) (stating that a nunc pro tunc order "may not be used to correct the court's failure to speak" (quotations and citation omitted)). Husband, as the moving party, bears the burden of showing that the court meant for alimony to begin in 1993, not 1996.[3] Husband notes that the August 1993 Decision orders Husband to pay "alimony in the sum of $3,000.00 per month for seven (7) years," the same alimony awarded in the 1996 Amended Order. Further, the alimony section in the 1996 Amended Findings of Fact and Conclusions of Law is identical to the wording in the August 1993 Decision.

¶ 14 After the August 1993 Decision, both parties submitted post-trial motions and the litigation continued for several years. Wife submitted pleadings claiming that Husband was delinquent on his child support payments and had underpaid his alimony obligations. When the district court entered the 1996 Amended Order, it may well have considered the litigation delay and the alleged arrearages and concluded that the alimony of seven years should commence from the 1996 Amended Order. Because the record does not clearly reflect that the court decided in 1996 for the alimony payments to retroactively commence in 1993, the "'good cause' required for the entry of an order nunc pro tunc under section 30–4a–1 was not present." *Bagshaw v. Bagshaw,* 788 P.2d 1057, 1061 (Utah Ct.App.1990).

3. Contrary to the dissent's contention, we are not "second-guessing [the district court's] guess" of what the 1996 court intended. Instead, we conclude that the district court erroneously applied the nunc pro tunc doctrine because Husband did not meet his burden.

4. The dissent asserts that we should vacate Judge Stott's decision and transfer the case back to Judge Davis. We find no basis in the law to support such a disposition, and the dissent fails to cite any authority. In fact, Utah law seems to

CONCLUSION

¶ 15 We find no obvious injustice in enforcing the 1996 Amended Order, which was prepared by Husband's attorney and clearly states that the seven years of alimony commence "with the execution of this Decree." Because there is a lack of good cause pursuant to Utah Code section 30–4a–1, the district court erred in applying the nunc pro tunc doctrine in this case.[4]

¶ 16 Accordingly, we reverse the nunc pro tunc order and remand for further proceedings consistent with this opinion.

¶ 17 I CONCUR: CAROLYN B. McHUGH, Judge.

ORME, Judge (dissenting):

¶ 18 There is no question but what the language of the 1996 Amended Order is problematic. Given the history and context of this case, it surely seems likely that the parties intended the seven-year alimony term to commence in 1993 rather than 1996. That said, it is inarguable that the plain language of the 1996 Amended Order provides that the term commence in 1996.

¶ 19 What baffles me about this case is that we have a trial judge who is a stranger to the case and its procedural twists and turns guessing about what was intended— and then this court second-guessing that guess—while the judge who actually presided over the case and entered the initial decree sat in chambers down the hall at the courthouse in Provo. Apparently this is due to the peculiar assignment practice of the Fourth District that results in cases shifting from one judge to another as the judges' assignments periodically change—from civil, to criminal, to domestic—rather than the initially assigned judge remaining responsible

leave the matter of case assignments up to the local districts. *See* Utah R. Jud. Admin. 3–104(3)(E); *see also Gillmor v. Wright,* 850 P.2d 431, 439 (Utah 1993) (Orme, J., concurring). Further, although Utah law is silent on the relevancy of a judge's memory in nunc pro tunc determinations, some jurisdictions have held that "a correction by nunc pro order cannot be made based on the memory of the judge." 46 Am. Jur.2d *Judgments* § 188 (1994).

for a case throughout its life. Although the Fourth District's approach might generally work, it needs to be tempered so that, as in this case, when the insight of the initial judge might be helpful, the case finds its way back to him or her as a matter of course. In other words, administrative routine cannot take priority over the necessity of doing justice in a particular case.

¶ 20 In my mind, it was error for Judge Stott to decide the question rather than transfer the case to Judge Davis, who originally presided over the parties' divorce and entered the 1996 Amended Order. Given his firsthand knowledge of the case, I would vacate the order appealed from and remand the case with instructions to transfer the Order to Show Cause to Judge Davis. I also suggest the judges of the Fourth District consider amending their case assignment protocol so that once a judge has entered a judgment in a case, the case is permanently his or her responsibility thereafter.