Carolyn Joyce BETTINGER (nka Carolyn Boies), Plaintiff, Appellant, and Cross–Appellee,

v.

Cass BETTINGER, Defendant, Appellee, and Cross–Appellant.

Nos. 880559–CA, 880297–CA.

Court of Appeals of Utah.

May 10, 1990.

Craig M. Peterson and E. Paul Wood, Salt Lake City, for plaintiff, appellant and cross-appellee.

Robert M. McDonald, Salt Lake City, for defendant, appellee, and cross-appellant.

## OPINION

Before BENCH and GREENWOOD, JJ., and LARSON [1], Senior Juvenile Court Judge.

---

1. John Farr Larson, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (Supp.1989).

GREENWOOD, Judge:

Plaintiff Carolyn Joyce Bettinger appeals the trial court's post-divorce order interpreting the divorce decree and dividing the equity of the family home between the parties. Defendant Cass Bettinger cross-appeals.[2] We affirm in part, reverse in part, and remand for entry of an order consistent with this opinion.

The parties married September 17, 1965. Four children were born during their fifteen-year union. The parties divorced August 14, 1980. Paragraph seven of the decree states as follows:

> Plaintiff is awarded the real property of the marriage in the form of a home ... subject to a lien thereon for one-half of the equity that may be in the house at the time of liquidation (which contemplates an increasing equity as the value increases). The equity is defined as the fair market value or sales price at the time defendant becomes entitled to liquidate his lien as set forth herein, less the amount of mortgages, costs of improvements made by plaintiff and costs of sale. This lien shall not be forecloseable until the youngest child reaches 18, or until the home is sold or until plaintiff remarries. On the occurrence of any of these events, two-thirds of the house payments then made shall be converted to child support and that sum shall be paid to plaintiff on a monthly basis as additional child support.

Plaintiff remarried on August 30, 1984, and sent a letter to defendant, offering to pay him his equity in the home. In a responsive letter, defendant rejected her offer and told her to immediately place the house on the market; he explained that he thought the house was worth $100,000 to $125,000 and her offer was for less than what he thought his equity was worth. He also stated that he would send an appraiser to establish the sale price of the home, but he did not do so until November 1986.

---

2. The appeal and cross-appeal are before this court as separate appeals. We consolidate for purposes of this opinion, pursuant to Utah R.App.P. 3.

In September 1984, plaintiff listed the home for sale at $125,000, but no potential buyers visited the home. Three months later she lowered the price to $113,000. Receiving no offers, she lowered the price to $103,000 and subsequently to $97,000. The house continued to be listed for sale until July 1987, when it sold for $91,500.

The house was listed in plaintiff's name only. She did not inform defendant of the varied prices the home was listed at during the listing period, nor did she contact defendant when the flat roof of the house collapsed from water damage and she had a new gabled roof installed. Over the years the house was listed for sale, plaintiff held several open houses and performed maintenance work on the home. Plaintiff and her new husband lived in the home for approximately one year after their marriage, and then moved and rented out the house.

During the approximately three years between plaintiff's August 30, 1984 remarriage and the sale, defendant continued to make mortgage payments. On January 27, 1986, defendant sent plaintiff a letter suggesting various repairs that would make the home more appealing to potential buyers. Otherwise, he made little effort to contact plaintiff about the status of the house.

On October 30, 1987, defendant filed a motion for division of the sale proceeds from the home. Following an evidentiary hearing, the trial court determined that the delay in selling the home was the fault of both parties. Pursuant to paragraph seven of the decree, the court held that defendant's equity should be determined at the time of plaintiff's remarriage and that his share in the equity was due and payable at that time. Based on expert testimony, the court found the home was worth $95,000 in August 1984, when plaintiff remarried. The court concluded that defendant was entitled to interest on his equity from the date the sale proceeds were placed in escrow, not from the date of plaintiff's remarriage. Finally, defendant was held responsible for one-half the cost of all capital improvements made to the home, valued at

$7964.76, and one-half of the costs of selling the home, established at $6113. The court found the only capital improvements made were a new gabled roof and new screens, both installed subsequent to plaintiff's remarriage.

Plaintiff argues the trial court abused its discretion by finding that defendant's equity should be determined at the time of plaintiff's remarriage, and by defining the decree term "improvements" to mean "capital improvements" only. Defendant argues on cross-appeal that the trial court abused its discretion by requiring him to pay one-half of all capital improvements made to the home subsequent to the date his lien became due and payable, by requiring him to pay one-half of sale costs, and by denying him interest on his equity in the home from the time of plaintiff's remarriage.

## EQUITY DETERMINATION

Plaintiff first contends on appeal that paragraph seven is ambiguous and that, based on the record, defendant's equity should be determined as of the time of sale of the home rather than at the time of plaintiff's remarriage.

■ A judgment must be enforced as written if the language is clear and unambiguous. *Park City Utah Corp. v. Ensign Co.*, 586 P.2d 446, 450 (Utah 1978). However, ambiguous judgments are subject to the same rules of construction that apply to all written instruments and "the entire record may be resorted to for the purpose of construing the judgment." *Id.* The determination of whether a contract is ambiguous is, at the outset, a question of law. *Regional Sales Agency, Inc. v. Reichert*, 784 P.2d 1210, 1213 (Utah Ct.App.1989). "If a trial court finds the agreement unambiguous and interprets its meaning by examining only the words of the agreement, this interpretation also presents a question of law." *Id.* Therefore, we are not required to give the trial court's interpretation of an unambiguous judgment any particular weight, but review its interpretation under a correctness standard. *Id.* However, if the trial court determines the lan-

guage is ambiguous and finds facts based upon extrinsic evidence, appellate review of such findings is limited to determining whether they are based on substantial, competent, admissible evidence. *50 West Broadway Assoc's. v. Redevelopment Agency of Salt Lake City,* 784 P.2d 1162, 1171–72 (Utah 1989).

■ The trial court did not indicate whether it found the language of the divorce decree ambiguous, but, simply interpreted the language of the decree. We find, however, that paragraph seven is ambiguous as to when the equity of the parties is to be determined. Language is ambiguous if the words suggest two or more plausible meanings. *Crowther v. Carter,* 767 P.2d 129, 131 (Utah Ct.App.1989). The decree language in question provides at one point that the home should be valued "at the time of liquidation" of the home, but later suggests that the home should be valued "at the time defendant becomes entitled to liquidate his lien." Equity is further described as "the fair market value *or* sales price." (Emphasis added). Therefore, the decree is susceptible to more than one interpretation and is, consequently, ambiguous.

■ The trial court did not examine the parties' intent or any other extrinsic evidence to determine which definition of equity was to apply, but interpreted the decree to mean that defendant's equity was payable when plaintiff remarried. Our review of the record does not reveal a clear intent of the parties to aid in interpreting the decree. Guiding our efforts to interpret the language of the decree, however, is the trial court's authority to divide and distribute property equitably. *Newmeyer v. Newmeyer,* 745 P.2d 1276, 1277 (Utah 1987); Utah Code Ann. § 30–3–5(1) (1986). We will not disturb property distributions on appeal unless they are unjust or constitute a clear abuse of discretion. *Turner v. Turner,* 649 P.2d 6, 8 (Utah 1982); *Rasband v. Rasband,* 752 P.2d 1331, 1335 (Utah Ct.App.1988).

■ We find further assistance in *Workman v. Workman,* 652 P.2d 931, 934 (Utah 1982), where the Utah Supreme Court held that where a court makes an equal division of particular property and the property is sold to a third party, the parties should each receive one-half of the actual sale price, rather than the appraised value. In *Workman,* the trial court found the value of the property to be $119,360, as established by the testimony of an appraiser, and ordered the husband to pay the wife $59,660, one-half the appraised value, if he elected to sell the home, "regardless of its sale price." *Id.* The supreme court reversed, noting that an appraisal of property is only an estimate, and that where the property has actually been sold, there is no justification for utilizing the appraised value when the actual value of the home can be easily determined from the sale price. *Id.*

We find *Workman* applicable to this case. The original decree gave plaintiff and defendant each a one-half interest in the equity of the marital home. Usually, when the event triggering payment of equity occurs, there is a buy-out of equity based on appraisal or agreement of the parties, or, listing and sale of the home with division of the proceeds when received. However, in this matter, through their own inability to cooperate, the parties were equally at fault for the delay in the sale of the home. We hold, therefore, that it is equitable that both parties equally share the result of that delay, by determining equity from the actual sale price of the home. Consequently, we reverse the trial court's determination that equity be determined as the home's appraised value at the time of plaintiff's remarriage, $95,000, and hold that the sale price of $91,500 is controlling.

## IMPROVEMENTS AND SALE COSTS

■ The trial court held that defendant was responsible for one-half the cost of all capital improvements, pursuant to the decree. Plaintiff argues that there is no basis supporting the determination that the term "improvements" means "capital improvements" only. Defendant contends that he should bear no responsibility for

improvements made after plaintiff's remarriage or for closing costs. We affirm the holding of the trial court that defendant is responsible only for capital improvements made to the home, including those made after plaintiff remarried, as well as one-half of sale costs.

Capital improvements are "betterments of a long lasting nature which add to the capital value of the property." *In re Marriage of Aird,* 175 Ill.App.3d 870, 125 Ill. Dec. 398, 400, 530 N.E.2d 556, 558 (1988) (emphasis omitted) (quoting *Finn v. McNeil,* 23 Mass.App.Ct. 367, 502 N.E.2d 557, 561 (1987)). An equitable division of the costs of maintenance and improvement to the marital domicile between the parties is within the discretion of the trial court. *Cf. Stephens v. Stephens,* 728 P.2d 991, 993 (Utah 1986). It is reasonable for defendant to be responsible for only those improvements which add to the value of or enhance the marketability of the home, since defendant will not benefit materially from maintenance improvements. Therefore, we affirm the trial court's interpretation of the term "improvements" to mean only "capital improvements."

Defendant's contention that he should not have to pay for closing costs or capital improvements made after plaintiff's remarriage, is dependent upon his claim that his equity lien was due and payable when plaintiff remarried. Since we have resolved that defendant's equity should be determined from the actual sale price, it follows that defendant bear responsibility for sharing the costs for capital improvements and sale costs.

### INTEREST

Finally, defendant contends that he is entitled to interest on his equity from the time his lien was due and payable. Since we have found that his equity was to be determined as of July 1987, the sale date, this claim is moot.

### CONCLUSION

We conclude that the trial court did not abuse its discretion in determining that defendant was liable for one-half of capital improvements to the home and sale costs, and that he was not entitled to interest from the time plaintiff remarried. However, we find that the trial court erred in determining the parties' equity as of the time of plaintiff's remarriage instead of the time of sale of the home, and that the appropriate value is that established by the sale price. The judgment of the trial court is affirmed in part, reversed in part, and remanded to determine the appropriate amount of equity to be awarded to defendant, in accordance with this opinion. No costs are awarded.

BENCH, J., and JOHN FARR LARSON, Senior Juvenile Court Judge, concur.