In the Matter of the **ESTATE OF Catherine LEONE.**

**Tracy L. SOUTHWICK, Appellant,**

**v.**

**Frank LEONE and Sam Leone, as conservators of Catherine Leone, a protected person, Appellees.**

**No. 910648–CA.**

Court of Appeals of Utah.

Sept. 21, 1993.

Charles A. Schultz (Argued), Gustavson, Schultz, Hall & Williams, Salt Lake City, for appellant.

William R. Hadley (Argued), John J. Borsos, Kunz, Kunz & Hadley, Salt Lake City, for appellees.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

BILLINGS, Presiding Judge:

Appellant Tracy Southwick appeals from two rulings of the trial court. First, he appeals from the court's Order determining he was not a beneficiary of Catherine Leone's pay-on-death (P.O.D.) account. Second, he appeals the court's entry of an Order nunc pro tunc which allowed Catherine's conservators, appellees Frank and Sam Leone, to eliminate him as a beneficiary on Catherine's life insurance policy after her death. We reverse.

## FACTS

Appellant married Catherine Leone on March 22, 1986. On April 14, 1986, Catherine purchased a life insurance policy. Along with appellant, the named beneficiaries were Catherine's mother and daughter, Gilda Leone and Catherine Montoya.

On July 15, 1987, Catherine suffered a cerebral hemorrhage that rendered her comatose and legally incompetent. On January 29, 1988, appellant, Gilda Leone, Catherine's brother Sam Leone, and Catherine Montoya entered into a stipulation and settlement agreement that appointed appellant Catherine's conservator. This stipulation also named appellant and Montoya beneficiaries of a P.O.D. account established for Catherine's benefit. The $40,000 initially deposited in the P.O.D. account came from Catherine's savings account. On March 2, 1988, the district court appointed appellant as conservator and guardian of Catherine and entered an order approving the parties' stipulation.

On October 2, 1989, appellant filed a complaint for divorce from Catherine. This original complaint listed Catherine's P.O.D. account as her personal property. Appellees were aware of this original divorce complaint. In December 1989, appellant filed a petition to terminate his guardianship and conservatorship over Catherine

and requested that appellees, Catherine's brothers, be appointed as her co-conservators. Appellees filed a consent to appointment as co-guardians and co-conservators. On December 13, 1989, appellant filed an amended divorce complaint. The amended divorce complaint did not refer to Catherine's P.O.D. account. Although the amended complaint was mailed to Catherine, the parties dispute whether the Leone family was aware of the amended complaint. Appellant was granted a default divorce from Catherine on January 9, 1990. Appellant's position of guardian/conservator was also terminated that day when appellees were appointed as Catherine's guardians/conservators. Five days prior to the change of conservators, the P.O.D. account was valued at approximately $46,242. The account was transferred to appellees in their capacity as conservators.

In February of 1990, Frank Leone, acting as co-conservator, filed a change of beneficiary form for the life insurance policy which was intended to eliminate appellant as a beneficiary.

Catherine died on January 25, 1991. The P.O.D. account was valued at approximately $36,000 immediately after Catherine's death. The life insurance policy was worth $21,590.

After Catherine's death, Travelers Insurance Company informed her family that the conservator of an estate could not change the beneficiary on one of their company's life insurance policies without a court order. Appellees denied appellant's claim to the life insurance policy proceeds and P.O.D. account. Appellant filed a demand for an accounting and payment from Catherine's estate.

On July 16, 1991, the district court granted appellees' motions regarding appellant's interest in the estate of Catherine Leone. The court entered an Order nunc pro tunc allowing appellees to change the beneficiaries of Catherine's life insurance policy, eliminating appellant as a beneficiary. The judge also signed an Order which denied appellant any claim to the P.O.D. account.

Appellant claims the trial court erred in ruling he had no claim to one-half of the proceeds of the P.O.D. account. Appellant also claims the trial court erred in issuing the Order nunc pro tunc which allowed the appellees to change the beneficiaries of Catherine's life insurance policy after her death. We agree. We reverse both of the trial court's Orders and remand for the entry of orders in conformance with our opinion.

## I. P.O.D. ACCOUNT

Appellant contends the trial court erred in ruling he had no interest in Catherine's P.O.D. account. Specifically, appellant asserts the trial court erroneously concluded the Order establishing the P.O.D. account required that appellant be Catherine's spouse at the time of her death to retain his interest in the P.O.D. account.

### A. Standard of Review

Court orders are subject to the same rules of construction that apply to other written instruments. *See Park City Utah Corp. v. Ensign Co.*, 586 P.2d 446, 450 (Utah 1978). When a trial court interprets the unambiguous language of an order, we review the court's interpretation for correctness. *Bettinger v. Bettinger*, 793 P.2d 389, 391 (Utah App.1990). However, if the trial court determines the language of an order is ambiguous and finds facts based upon extrinsic evidence, our review of those findings is limited to determining whether they are clearly erroneous. *Id.* at 392.

The trial court, in its May 1992 Minute Entry, states "[t]his court finds Southwick, as a condition precedent to receiving these funds of Catherine's, was to be her lawfully-wedded spouse at the time of her death. The Order of March 2, 1988 clearly reflects such fact." Thus, the trial court looked only to the language of the March 2, 1988 Order to reach its conclusion, and we review the ruling for correctness.

### B. Interpretation of March 2, 1988 Order

■ Appellees contend the terms of the P.O.D. account, as reflected in the March 2, 1988 Order, included a condition precedent that appellant remain married to Catherine to retain his interest in the P.O.D. account.

The relevant provision of the Order provides:

> Catherine Montoya, the daughter of the above-named protected person, and Tracy Southwick, the spouse of the protected person, shall be named as pay-on-death beneficiaries of said account, each to share equally.

The terms of this Order, like all contracts, "are to be interpreted in accordance with their usually accepted meanings and should be read as a whole, in an attempt to harmonize and give effect to all of the contract provisions." *Nielsen v. O'Reilly*, 848 P.2d 664, 665 (Utah 1992). We agree with appellant that the usually accepted meaning of the phrase, "the spouse of the protected person," when it is set off by commas and follows a person's name, is that it is merely a non-restrictive adjective phrase meant to identify the individual.

Furthermore, the descriptive language, "daughter of the above-named protected person," follows the designation of Catherine Montoya as a beneficiary of the P.O.D. account. This language parallels the "spouse of the protected person" language after appellant's designation as a beneficiary. The descriptive nature of these parallel terms supports our conclusion that the language was not intended to be a condition precedent, but simply to describe appellant's status at the time the account was created.

This interpretation is consistent with prior Utah authority. The Utah Supreme Court has held that where a " 'beneficiary is named or can otherwise be definitely identified her designation as the wife of the insured is descriptive only, and it is immaterial whether or not she is, or becomes his lawful wife, ... or even that another person is his legal wife.' " *Proctor v. Insurance Co. of N. Am.*, 714 P.2d 1156, 1158 (Utah 1986) (quoting 46 C.J.S. *Insurance* § 1160 (1946)). Similarly, when the Utah Supreme Court interpreted a divorce decree requiring the husband to maintain life insurance naming "three minor children" as beneficiaries, the court held the designation "minor children" was descriptive of the children's status at the time of the divorce, and was not meant to make them beneficiaries only during their minority. *Travelers Ins. Co. v. Lewis*, 531 P.2d 484, 486 (Utah 1975).

In a similar case, *Graves v. Summit Bank*, 541 N.E.2d 974 (Ind.Ct.App.1989), the Indiana Court of Appeals held that the words "wife as per will," following the wife's name in a beneficiary designation on her deceased former husband's individual retirement account, were "mere surplusage" and had no legal effect. *Id.* at 977–78. The court rejected the argument that these words created the condition precedent appellees argue for here. *See id.* at 978.

■ Furthermore, had the parties intended the court's Order to eliminate appellant as a beneficiary upon a divorce, the stipulation that prefaced the Order could have easily provided so explicitly.[1]

---

1. Contrary to appellees' suggestion, Utah law negates any presumption that the divorce of a P.O.D. account beneficiary from the owner of a P.O.D. account terminates the beneficiary's interest. Utah law explicitly provides that P.O.D. accounts are non-testamentary contracts. Section 75–6–104(5) provides: "[A] right of survivorship arising from the express terms of the account ... or a P.O.D. designation cannot be changed by will." Utah Code Ann. § 75–6–104(5) (1993). Further, section 75–6–105 provides:

   > The provisions of Section 75–6–104 as to rights of survivorship are determined by the

   form of the account at the death of a party. This form may be altered by written order given by a party to the financial institution to change the form of the account or to stop or vary payment under the terms of the account. The order or request must be signed by a party, received by the financial institution during the party's lifetime, and not countermanded by other written order of the same party during his lifetime.

   *Id.* § 75–6–105. In addition, section 75–6–106 provides "[a]ny transfers resulting from the application of Section 75–6–104 are effective by reason of the account contracts involved and

Therefore, we hold the trial court erred in concluding the language of the March 2, 1988 Order created a condition precedent that appellant be Catherine's lawful spouse at the time his interest in the P.O.D. account vested. The plain meaning of the Order contradicts such a reading, as does case law which holds such designations are not to be read as conditions, but rather as descriptions of a named beneficiary at the time the instrument is created.

## II. NUNC PRO TUNC ORDER CHANGING LIFE INSURANCE POLICY BENEFICIARIES

■ Following a hearing on July 16, 1991, six months after Catherine's death, the trial court entered an Order nunc pro tunc allowing appellees to change the beneficiaries of Catherine's life insurance policy. Appellant contends the use of the doctrine of nunc pro tunc to eliminate him as a beneficiary was improper for several reasons. Because we agree the court had no authority to issue an Order nunc pro tunc eliminating appellant as a beneficiary after Catherine's death, we do not reach the other arguments raised by appellant.

Determining whether ' the trial court properly utilized the legal doctrine of nunc pro tunc to eliminate appellant as a life insurance beneficiary presents a question of law which we review for correctness. *See Bagshaw v. Bagshaw*, 788 P.2d 1057, 1060 (Utah App.1990).

A court's authority to issue orders protecting an individual under a disability is governed by Utah Code Ann. § 75–5–408 (1992). That section provides:

The court has the following powers which may be exercised directly or through a conservator in respect to the estate and affairs of protected persons:

. . . .

(d) The court may exercise, or direct the exercise of, its authority to exercise or release powers of appointment of which the protected person is donee, . . . . or to change beneficiaries under insurance and annuity policies, only if satisfied, after notice and hearing, that it is in the best interests of the protected person, and that he either is incapable of consenting or has consented to the proposed exercise of power.

*Id.* Thus, under section 75–5–408 the court may change a protected person's life insurance beneficiaries after the court holds a hearing to determine the best interests of the protected person.

By its terms, section 75–5–408 only applies while the protected person is alive. Consequently, if the court had attempted to issue an order based strictly on the July 16, 1991 hearing, held after Catherine's death, it would clearly be improper. However, the nunc pro tunc order here related back to the time the conservators applied to the life insurance company for a change of beneficiaries; an event that happened during Catherine's lifetime. Nevertheless, the use of a. nunc pro tunc order to change the beneficiaries of Catherine's life insurance policy after her death was improper because the court had never been asked to act under section 75–5–408 while she was alive.

■ In *Bagshaw*, this court explained the principles of nunc pro tunc.

At common law, nunc pro tunc allowed a court to correct *its* earlier error or supply *its* omission so the record accurately reflected that which in fact had taken place. Cases in which courts traditionally have applied the nunc pro tunc doctrine fall into two categories:

(1) those in which one of the parties died after the submission of the case to the lower court for its decision, but before the actual rendition of judgment; and

(2) those in which a judgment has in fact been rendered by the lower court,

---

this statute and are not to be considered as testamentary. . . ." *Id.* § 75–6–106.

These sections make it clear that section 75–2–508, which provides that a divorce revokes any disposition or appointment of property made in a former spouse's will, does not apply to P.O.D. accounts. Therefore, there is no presumption that a divorce revokes a beneficiary's interest in a P.O.D. account.

but the clerk has failed to perform the ministerial function of entry.

*Bagshaw,* 788 P.2d at 1060 (quoting 6A James W. Moore, Moore's Federal Practice § 58.08 (1989)) (citations omitted) (emphasis in original). Thus, nunc pro tunc orders are used to correct the court's omission or error. Further, any issue addressed in the order must have been previously submitted to the court. Moreover, nunc pro tunc orders cannot be used " 'to revive the time for taking the required step in a legal proceeding after the statutory time for doing so [has] elapsed.' " *Diehl Lumber Transp., Inc. v. Mickelson,* 802 P.2d 739, 743 (Utah App.1990) (quoting *Kettner v. Snow,* 13 Utah 2d 382, 375 P.2d 28, 30 (1962)).

The Utah Supreme Court has noted:

A motion nunc pro tunc is used to make the record speak the truth; it may not be used to correct the court's failure to speak. In other words, the function of a nunc pro tunc order is not to make an order then for now, but to enter now for then an order previously made.

*Preece v. Preece,* 682 P.2d 298, 299 (Utah 1984) (citations omitted). "A nunc pro tunc order may not be used 'to show what the court might or should have decided, or intended to decide, as distinguished from what it actually did decide.' " *Diehl Lumber,* 802 P.2d at 743 (quoting *Larson v. Bedke,* 211 Neb. 247, 318 N.W.2d 253, 258 (1982)) (emphasis deleted).

In this case, there was no court hearing prior to Catherine's death to determine her best interests in regard to the beneficiaries of the life insurance policy. In fact, the court had not been requested to act. The court cannot enter a nunc pro tunc order based on what it might or should have done had there been a motion and hearing. Moreover, the court cannot circumvent the fact of Catherine's death, which terminates its authority under section 75–5–408, and bootstrap its authority to act simply by issuing a nunc pro tunc order relating back to a time prior to her death.

Thus, we hold the court's use of a nunc pro tunc order was improper and reverse the trial court's Order allowing the change of beneficiaries on Catherine's life insurance policy after her death.[2]

## CONCLUSION

Because the trial court improperly concluded the March 2, 1988 Order required appellant to remain married to Catherine to retain his interest in the P.O.D. account, we reverse the trial court's Order denying appellant's claim to his share of the P.O.D. account. Furthermore, because the appellees requested no court action before Catherine's death to change the beneficiaries on Catherine's life insurance policy, we reverse its nunc pro tunc Order allowing such a change to occur after her death. We therefore remand for the entry of orders giving appellant his share of the P.O.D. account and the life insurance policy proceeds.

BENCH and ORME, JJ., concur.

---

**2.** Appellees assert appellant should be denied relief because he comes before the court with unclean hands. However, their failure to raise this issue adequately before the trial court precludes our addressing it on appeal. *See Meyer v. Deluke,* 23 Utah 2d 74, 457 P.2d 966, 969 (1969). In arguing the unclean hands doctrine, appellees raise many of the facts relied on below. However, a close review of the record indicates their legal theories were estoppel and breach of fiduciary duties. No authority or argument was presented below regarding the doctrine of unclean hands.

Moreover, assuming the doctrine's applicability, even were we to reach the issue we are not persuaded that appellant's conduct concerning Catherine demonstrated unclean hands. Appellees make the general claim that appellant's conduct was unscrupulous and was a breach of loyalty to his wife. The record, however, indicates that appellant suffered financially in an attempt to maintain continuous medical treatment for his wife. It is undisputed that appellant cared for his wife for over two years after she suffered the hemorrhage and depleted his personal resources. Apparently the divorce was seen as necessary to assist in securing Medicaid benefits. Thus, if we were to reach this issue we would rule for appellant.